UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LENORE JEAN STEVENS,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security<br><br>    Defendant. | Case No.  13-cv-02830-NJV<br><br>**ORDER ON MOTION & CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 19 & 24 |

## INTRODUCTION

Plaintiff, Lenore Jean Stevens, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act. Tr. 20. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs. 4 & 13). The court therefore may decide the parties' cross-motions for summary judgment. For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF RELEVANT EVIDENCE

In 2007, Plaintiff was adjudged disabled and awarded benefits under Title XVI of the Social Security Act. Tr. 20. Sometime in 2008, Plaintiff was incarcerated and lost her benefits. Pl.'s Br. (Doc. 19) at 2. Following her release from prison, Plaintiff filed a new claim for disability, alleging an onset date of January 1, 2002 and alleging both physical and mental impairments. Tr. 20.

### A.    Relevant mental medical history

The evidence of record establishes that Plaintiff has received treatment for a medley of mental issues. In November of 2007, psychiatrist Dr. Jain placed Plaintiff on involuntary suicide precautions and recommended inpatient psychiatric treatment once she was stable. Tr. 28. In September of 2008, Plaintiff received inpatient treatment and was diagnosed with schizoaffective disorder and personality disorder. *Id*. In 2009, Dr. Jain diagnosed Plaintiff with schozoaffective disorder, polysubstance dependence, and borderline personality disorder. Tr. 29. In 2010, a state agency consultant diagnosed Plaintiff with schizoaffective disorder. *Id*. In 2011, Dr. Hayman diagnosed Plaintiff with schizoaffective disorder and panic disorder with agoraphobia. *Id*. In 2011 consultative examiner, Dr. McGehee, diagnosed Plaintiff with paranoid type schizophrenia, paranoid personality disorder, and schizotypal personality disorder. *Id*. In addition, Plaintiff has been treated for depression, insomnia, and Sx disorder. *See* Tr. 512-14 & 540-47.

### B.    Relevant physical medical history

Plaintiff has a history of back pain, a history of seizures, suffers obesity and from chronic liver disease, and has a substance abuse disorder. Imaging, from as early as 2007, shows that

Plaintiff suffers degenerative disk disease. Tr. 29 & 525. In 2008, Plaintiff was prescribed a cane. Tr. 29. In 2009, Dr. Workman performed a vertebroplasy for a non-healing compression fracture. Tr. 516. A lumbar spine x-ray on December 9, 2009, showed post-surgical changes at L1 and degenerative changes at L4-5 and L5-S1. Tr. 411. A lumbosacral x-ray dated June 22, 2011, showed an old L1 fracture "treated with bone cement" and confirmed degenerative disc space at L4-5 and L5-S1. Tr. 565. On June 29, 2011, the following abnormalities were described: a superior endplate compression deformity of L1 with thirty percent loss of height and mild retropulsion. Tr. 517. Primary care physician Frank Fisher, M.D., completed a Medical Source Statement – Physical on June 27, 2011. Tr. 513-14. He listed extensive limitations on sitting, standing, and walking, and noted that Plaintiff must lie down every two hours for fifteen minutes due to back pain. *Id*.

**THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*Id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*Id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. Tr. 20-32.:

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 23.

At Step Two, the claimant bears the burden of showing that she has a medically severe

impairment or combination of impairments.  20 C.F.R. § 416.920(a)(4)(ii), (c).  "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)).  The ALJ found that Plaintiff suffered the following severe impairments: an affective disorder; substance abuse disorder; low back pain of unknown etiology; obesity; and history of seizures of unknown etiology.  Tr. 23.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404.  *See* 20 C.F.R. § 416.920(a)(4)(iii), (d).  The claimant bears the burden of showing her impairments meet or equal an impairment in the listing.  *Id*.  If the claimant is successful, a disability is presumed and benefits are awarded.  *Id*.  If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.  *Id*. § 416.920(a)(4)(iv), (e).  Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments.  Tr. 23.  Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with some physical and mental restrictions.  Tr. 27.

At Step Four, and pursuant 20 C.F.R. 416.965, the ALJ determined that Plaintiff had no past relevant work.  Tr. 31.

At Step Five, the ALJ found that considering Plaintiff's age of 45, education level, work experience, and RFC, and after consulting with a vocational expert, that "there are jobs that exist in significant numbers in the national economy" that Plaintiff can perform.  *Id*.  Accordingly, the ALJ determined that Plaintiff had "not been under a disability, as defined in the Social Security Act, since October 4, 2010, the date the application was filed."  Tr. 32.

**ISSUESS PRESENTED**

Plaintiff presents four issues for this court's review of the ALJ's decision: (1) whether the "ALJ committed harmful legal error by failing to adequately evaluate whether the plaintiff met listing level severity;"  (2) whether the "ALJ committed harmful legal error by inadequately evaluating the psychiatric impairments;" (3)  whether the "ALJ committed harmful legal error by failing to include all limitations in the RFC;" and (4) whether the "ALJ committed harmful legal

1  error in incorrectly assigning weight to the treating physician's medical source statement." Pl.'s

2  Mot. Doc. 19 at 2.

## DISCUSSION

### A.     The ALJ's Step Three Determination

Plaintiff claims that the ALJ erred at Step Three of the sequential evaluation when he failed to articulate his reasons for finding that Plaintiff did not meet any specific listing. The Commissioner counters that "the ALJ is not required to spell out why a claimant fails to satisfy every different section of the listings" and that Plaintiff has failed to present evidence suggesting that she met the listings at issue. Def.'s Mot. Doc. 24 at 6.

As stated above, at Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. See 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds that Plaintiff's impairments or combination of impairments meet or equal a listing, then a determination of disability will be made.

In this case, the ALJ considered Listings: 1.04 (spine disorder); 3.03 (asthma); 5.05 (chronic liver disease); 11.02 (convulsive epilepsy); 11.03 (non-convulsive epilepsy); 14.09 (arthritis), and the mental impairments of: 12.03 (psychotic disorders); 12.04 (affective disorders), and 12.09 (substance addiction disorders). Tr. 23-27). The Commissioner states that the "ALJ discussed each of these listings in detail and explained that the record evidence does not demonstrate that Plaintiff meets the requirements of each listing." Def.'s Mot. Doc. 24 at 7. While the ALJ did recite each listing in detail, in explaining why Plaintiff did not meet the listings, the ALJ did little else than state that the record evidence did not support each listing.

As to Listings 1.04 (spine disorder), 5.05 (chronic liver disease), and 14.09 (arthritis), the ALJ did nothing more than set forth the listing requirements, then conclude with one sentence of "analysis," stating that there was no evidence to support a finding that Plaintiff met the Listings. As to 3.03 (asthma), the ALJ set forth the listing requirements, concluded that there was no evidence to support a conclusion that Plaintiff met the listing, and added that, despite prescribed treatment, there was no evidence of occurrences requiring physician intervention with the necessary frequency to meet the Listing. Tr. 24. As to 11.02 (convulsive epilepsy) and 11.03

5

1    (non-convulsive epilepsy), the ALJ set forth the listing requirements, concluded that "the medical

2    evidence of record does not contain the documentation required by [the Listings]," and then noted

3    that Plaintiff had a Missouri driver's license. Tr. 25.

4      The problem with the ALJ's analysis is that it lacks any analysis. The ALJ presumably

5    evaluated these impairments to determine whether their severity met or equaled a listing because

6    there was some evidence of record regarding those impairments. The ALJ makes no mention of

7    that evidence and why Plaintiff's limitations fail to meet the listings. In some cases, other than

8    making conclusory statements, the ALJ fails to make any mention of the limitations in any other

9    portion of the decision, providing this court with no basis for understanding the ALJ's

10   consideration of the limitations. In other cases, the ALJ discusses the limitations when making the

11   RFC determination. For example, when formulating the RFC, the ALJ discussed Plaintiff's

12   history of back problems noting: "imaging from 2007 showed degenerative disc disease;"

13   "impressions of a herniated lumbar disc and left ankle pain;" that Plaintiff "underwent

14   verebroplasty at L1 in January 2009 for a non-healing compression fracture;" and that Plaintiff

15   was in a motor vehicle accident in about 2007 and [had] surgery on her back." Tr. 29. Thus, as to

16   this limitation, the court is able to determine why the ALJ considered whether Plaintiff met Listing

17   1.04 (disorders of the spine). However, the court is unable to determine why the ALJ determined

18   that Plaintiff did not meet the listing. The court is not attempting to make a determination of

19   whether Plaintiff meets these listings. Rather, the court is attempting to conduct its mandated

20   review of the ALJ's decision and without more than the ALJ's statement that "[t]he medical

21   evidence of record does not contain all of the required evidence," (Tr. 24), the court is unable to

22   do so.

23     The ALJ was similarly frugal with his analysis of Plaintiff's mental impairments. In each

24   of the mental impairment listings, 12.03 (psychotic disorders), 12.04 (affective disorders), and

25   12.09 (substance addiction disorders), "[t]he required level of severity for these disorders is met

26   when the requirements in both A and B are satisfied, or when the requirements in C are satisfied."

27   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03.

28     Here, the ALJ first determined whether Plaintiff met the criteria for each of the listings

6

under Paragraph B.  After finding that Plaintiff did not meet the Paragraph B requirements, and thus, there was no need to review the impairments under Paragraph A, the ALJ turned to Paragraph C.  As to Listing 12.03, the ALJ set forth the Paragraph C requirements and left it at that.  The ALJ made no Paragraph C finding of 12.03 (psychotic disorders) for this court to review.  As to Paragraph C of Listing 12.04 (affective disorders), the ALJ simply stated that "the undersigned finds no objective evidence to support the listed systems or signs or any other listed criteria." Tr. 26.  This is problematic considering the evidence of record in this case.  As the ALJ set forth in the RFC determination, Plaintiff was:  (1) diagnosed with schizoaffective disorder by Dr. Jain in September of 2008; (2) assessed with schizoaffective disorder by Dr. Jain in January of 2009; (3) diagnosed by a state agency psychological consultant in December of 2010 with schizoaffective disorder; (4) diagnosed with schizoaffective disorder by Dr. Hayman in January of 2011; and (5) diagnosed with paranoid type schizophrenia, paranoid personality disorder, and schizotypal personality disorder in March 2011 by Dr. McGehee.  Tr. 28-29.  Although the ALJ rejected Dr. McGehee's opinion that Plaintiff was disabled, the ALJ did not reject the multiple diagnoses of schizoaffective disorder.

>Paragraph C requires:
>
>C. Medically documented history of a chronic schizophrenic, paranoid, or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
>>1. Repeated episodes of decompensation, each of extended duration; or
>>
>>2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>>
>>3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

On the record above, Plaintiff has a medically documented history of schizoaffective "disorder of at least 2 years' duration."  Thus, the court would expect some analysis from the ALJ

7

that explains the determination that Plaintiff did not meet the listing.

The reason this Circuit has found that "[a] boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet a Listing]," *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001), is because of the court's duty to review the sufficiency of the ALJ's determinations. "When the 'Court simply cannot determine from the ALJ's opinion how [s]he came to the conclusion that [Plaintiff's] 'severe' impairments did not equal' the listing, the 'ALJ's recitation of the evidence does not provide an adequate foundation for [her]' finding that the listing was not met." *Coelho v. Colvin*, No. 3:13-CV-04060-JSC, 2014 WL 5107058, at *13 (N.D. Cal. Oct. 10, 2014) (quoting *Santiago v. Barnhart,* 278 F.Supp.2d. 1049, 1058 (N.D. Cal. 2003)). Accordingly, this matter is properly remanded for the ALJ to sufficiently explain the Step Three determination.

### B. The ALJ's Evaluation of the Psychiatric Impairments & the RFC Determination

It is clear to the court that Plaintiff intended these two issues to be taken in tandem. Indeed, the Commissioner addresses these arguments only as subparts of the same challenge to the ALJ's ultimate RFC findings. Because the court finds that remand is appropriate for the ALJ to revisit the Step Three determination and, as discussed supra, for the ALJ to properly consider Dr. Fischer's opinion in formulating the RFC, the court will decline to decide these issues as they are now moot.

### C. The ALJ's Assignment of Weight to the Treating Physician's Opinion

Plaintiff asserts that the ALJ incorrectly discounted Plaintiff's treating physician's opinion, because the ALJ mistakenly believed the physician to be a psychiatrist. The Commissioner counters that regardless of any mistake, the ALJ properly discounted Dr. Fischer's opinion.

Generally, the opinion of a treating physician is afforded great weight. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("We afford greater weight to a treating physician's opinion because he is employed to cure and has a greater opportunity to know and observe the

patient as an individual.") (internal quotation omitted). However, "[i]f there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (quoting 20 C.F.R. § 404.1527(d)(2)).

On June 27, 2011, Dr. Fisher completed a Medical Source Statement-Physical form in which he indicated that Plaintiff could only lift or carry less than five pounds, stand or walk for only less than 15 minutes at a time for a total of less than one hour per workday, and sit for only 15 minutes at a time for up to one hour total per day. Tr. 513-14. Dr. Fisher also opined as to Plaintiff's mental limitations. *Id*. The ALJ discussed Dr. Fisher's findings and held that "Dr. Fischer's mental residual functional capacity is fairly consistent with the record as a whole, and is given much weight, but his physical residual functional capacity is not." Tr. 30. The ALJ went on to explain that Dr. Fisher's "opinion as to the claimant's exertion capabilities appears to rest as least in part on an assessment of impairments outside the psychiatrist's area of expertise, and without reference or support from objective evidence." *Id*.

However, Dr. Fischer was not Plaintiff's psychiatrist and thus, the ALJ's reason for discounting Dr. Fisher's opinion is not supported by substantial evidence. The Commissioner argues that this error should be excused because: (1) Plaintiff failed to identify Dr. Fischer's medical specialty; (2) even though Dr. Fisher states that he specializes in managing pain conditions that "*does not* mean that he is *not* a psychologist or psychiatrist"; and that Plaintiff testified that she saw Dr. Fisher for mental health reasons and the ALJ was entitled to rely on Plaintiff's testimony. Def.'s Mot. (Doc. 24) at 15 (emphasis added). The court finds these arguments to be without merit. Dr. Fisher stated that he is a treating physician (Tr. 555) and Plaintiff's primary care physician (Tr. 602), who specializes in pain management (*id*.) and has been treating Plaintiff for physical and mental maladies (Tr. 603). Indeed, the record evidence supports these statements, showing that Plaintiff saw Dr. Fisher for physical ailments such as a

9

sore throat (Tr. 543-45), blurry vision and a cough with green sputum (Tr. 546), dysuria (Tr. 590), moles (Tr. 591), weight issues (Tr. 592), back and leg pain (Tr. 593), shingles (Tr. 594-95), nerve pain (Tr. 596), and a cough (Tr. 597). Further, Plaintiff testified that Dr. Fisher was treating her for lower back and lower leg pain. Tr. 48. Thus, the ALJ's decision to discount Dr. Fisher's opinion regarding Plaintiff's physical condition because Dr. Fisher is a psychiatrist is unsupported by the record.

The Commissioner also argues that "[e]ven if the ALJ was mistaken in concluding that Dr. Fisher specializes in treating mental disorders, any such error would be harmless" because the "ALJ's conclusion that Dr. Fisher's conclusory assessment was unsupported by objective findings is supported by substantial evidence regardless of Dr. Fisher's medical specialty." Def. Mot. (Doc. 24) at 15. The issue here is not the ALJ's mistake as to Dr. Fisher's medical specialty. The issue is that the ALJ, despite the plethora of medical records to the contrary, believed that Dr. Fisher was a psychiatrist, who had had opined regarding Plaintiff's physical condition, which would be outside his area of medical expertise. In asking this court to uphold the ALJ's determination, the Commissioner points the court to other evidence in the record which she claims undermines Dr. Fisher's opinion. Specifically, the Commissioner points to the ALJ's reference to the 2011 imaging of Plaintiff's spine which "showed no acute lumbar spine fracture or subluxation with an old fracture treated with bone cement, with some 'degenerative disc space at L4-L5 and L5-S1.'" *Id*. at 14 (citing Tr. 565). Indeed, this reference to the record is made by the ALJ just after rejecting Dr. Fisher's opinion. Tr. 30. However, the full basis for the assignment of little weight to Dr. Fisher's opinion is predicated on a mistake about the doctor's expertise and even credentials. The court is left to speculate as to whether the single report regarding Plaintiff's spine above might outweigh the treating physician's opinion as to Plaintiff's physical limitations. The Commissioner suggests that this court reweigh the evidence after reevaluating Dr. Fisher's opinion, which the court cannot do.

10

In light of the content of the medical records, Dr. Fisher's statements, and Plaintiff's testimony, the court determined that the ALJ rendered her decision without a full review of the record. Accordingly, this case is properly remanded for the ALJ to fully review and weigh the opinion of treating physician Dr. Fisher.

## CONCLUSION

The court finds that the appropriate remedy for the ALJ's error is to remand this action to the Commissioner with instructions for the ALJ to properly set forth her Step Three determinations and to properly assign weight to treating physician Dr. Fisher after a complete review of his records. The other two issues raised by Plaintiff—the ALJ's evaluation of the psychiatric impairments and the RFC determination—should be addressed by the ALJ after a proper Step Three determination is made and appropriate weight is given to Dr. Fisher's opinion.

For the reasons stated above, the court grants Plaintiff's motion for summary judgment, and denies Defendant's motion for summary judgment. Accordingly, the court reverses the Commissioner's decision and remands the case for further proceedings consistent with this order.

**IT IS SO ORDERED**.

Dated: December 10, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge